FILED

04/25/2018

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
### November 7, 2017 Session

## KHURSHID ISMOILOV v. SEARS HOLDINGS CORPORATION ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 15C3758     Thomas W. Brothers, Judge

_____

### No. M2017-00897-COA-R3-CV

_____

This case presents the issue of a seller's liability for damages caused by an allegedly defective water heater. The trial court granted judgment on the pleadings in favor of the defendant seller concerning the plaintiff's claims of products liability, strict liability, breach of implied warranty, negligence, and unfair or deceptive trade practices, finding these claims to be barred by the expiration of the ten-year statute of repose applicable to products liability actions. The trial court subsequently granted summary judgment in favor of the seller regarding the plaintiff's remaining claim of breach of express warranty. Determining that no material factual disputes existed, the court held that the seller was entitled to judgment as a matter of law because the seller had demonstrated that it had fully complied with the warranty on the water heater at issue. The plaintiff filed a motion to alter or amend, also requesting a more specific order. The trial court denied the motion to alter or amend except that it provided a more definite statement of the basis for its grant of summary judgment in favor of the seller. The plaintiff has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Ali Abdel Ati, Nashville, Tennessee, for the appellant, Khurshid Ismoilov.

Christen C. Blackburn and Michael S. Holder, Nashville, Tennessee, for the appellees, Sears Holdings Corporation and Sears Roebuck and Co.

**OPINION**

**I. Factual and Procedural Background**

The plaintiff, Khurshid Ismoilov, filed a products liability action in the General Sessions Court for Davidson County on June 16, 2015. Mr. Ismoilov named Sears Holdings Corporation ("Sears") as the defendant, alleging that on June 2, 2005, his "predecessor"[1] purchased a water heater from Sears with an express twelve-year warranty. Mr. Ismoilov alleged that on May 14, 2014, the water heater "suddenly exploded and leaked water everywhere badly damaging the property, the floors and the walls and causing mold in the premises because of the leak." Mr. Ismoilov asserted claims of products liability, strict liability in tort, breach of express and implied warranty, and negligence, and he sought damages of less than $25,000.

A hearing was conducted on August 26, 2015, during which the parties appeared with counsel and discussed a subpoena issued by Mr. Ismoilov, seeking the production of warranty documentation by Sears. Counsel for Sears stated that no such documents had been located despite a diligent search. The General Sessions Court therefore determined that Sears had complied with the subpoena and "advised counsel for the Plaintiff that he could either pay for Defendant's court reporter appearance fee and continue the case or dismiss the case on the merits." Mr. Ismoilov opted to pay the court reporter's fee and continue the case to October 7, 2015.

The General Sessions Civil Warrant contains a notation that the case was ultimately dismissed on October 7, 2015. On October 8, 2015, Mr. Ismoilov filed a notice of appeal to the Davidson County Circuit Court ("trial court"). On October 23, 2015, Mr. Ismoilov filed a motion seeking to amend his complaint in order to more fully explain the factual basis of his claims. The trial court entered an order on November 12, 2015, granting leave for Mr. Ismoilov to file his amended complaint.

Mr. Ismoilov's amended complaint was filed on November 17, 2015. In this complaint, Mr. Ismoilov explained that the prior owner of his home purchased a Kenmore water heater from Sears on June 2, 2005, and that it was installed in the home on the same day. According to Mr. Ismoilov's amended complaint, the water heater had an express warranty of twelve years' duration, which would result in an expiration date of June 2, 2017. Mr. Ismoilov further averred that on May 14, 2014, the water heater "exploded" and flooded the ground floor of his home, causing extensive property damage. Mr. Ismoilov informed Sears of the incident, and Sears replaced the water

---

[1] Later pleadings reveal that Mr. Ismoilov was referring to the previous owner of a home now owned by him.

2

heater on the following day. Sears also allegedly opened an investigation concerning the damages caused by faulty water heater.

Mr. Ismoilov asserted that he communicated with a Sears representative, Sean Maines, who requested documentation regarding Mr. Ismoilov's ownership of the home and repair estimates. Mr. Ismoilov claimed that he provided the requested documentation and was told by Mr. Maines that when Sears accepted a repair estimate, "we can move forward and get the claim processed and resolved." According to Mr. Ismoilov, Mr. Maines further communicated that the repair estimate would need to be "broken down between Material cost, labor cost and misc. cost." Mr. Ismoilov stated that he provided further estimate and repair information to Mr. Maines. It is undisputed that Mr. Maines then ceased communications with Mr. Ismoilov, leaving the claim unresolved.

Mr. Ismoilov alleged that he suffered damages in the amount of $13,958 in property damage to the home, $6,600 in unpaid rent, $1,350 in reduced rent value (because he subsequently had to lower the rent amount), and cleaning expenses of $600. Mr. Ismoilov asserted multiple claims against Sears for unfair and deceptive practices, breach of express and implied warranties, strict liability, and negligence.

In response, Sears filed an answer, denying liability and asserting the defenses of comparative fault and expiration of the applicable statutes of limitations and repose. Sears subsequently filed a motion for judgment on the pleadings, wherein Sears posited that Mr. Ismoilov could not prevail on his products liability claim due to the expiration of the statutes of limitations and repose. Sears further asserted that Mr. Ismoilov's other alleged causes of action failed to state a claim upon which relief could be granted.

On February 5, 2016, the trial court conducted a hearing regarding Sears's motion for judgment on the pleadings. In its subsequent order entered, the trial court granted Sears's motion as to all claims except Mr. Ismoilov's claim of breach of express warranty. Finding that there was no Tennessee case on point concerning whether a seller's liability could be extended when the express warranty covered a longer period than the applicable statute of repose, the court relied upon a decision in which the North Carolina Supreme Court held affirmatively regarding this question. *See Christie v. Hartley Const.*, 766 S.E.2d 283 (N.C. 2014). The court thus directed Mr. Ismoilov to file an amended complaint with a more definite statement regarding the express warranty and to attach a copy of the warranty or provide a statement explaining why the warranty was unavailable.

On March 9, 2016, Mr. Ismoilov filed a second amended complaint, alleging solely a cause of action for breach of express warranty. Mr. Ismoilov attached an affidavit, wherein he stated that he purchased the home during foreclosure proceedings

and was not provided the warranty documentation by the previous owner. Mr. Ismoilov asserted, however, that Sears had admitted the existence of a twelve-year express warranty on the water heater.

On March 31, 2016, Mr. Ismoilov filed a motion seeking to exclude from evidence a document proffered by Sears entitled, "Master Protection Agreement." Mr. Ismoilov contended that this document was irrelevant because it was dated after the purchase of the water heater in question and was issued by a party other than the defendant. The document in question, a copy of which was attached to Mr. Ismoilov's motion, reflected that it was issued by Sears Protection Services, a division of Sears Roebuck and Co., and the document was not signed by any party.

On April 18, 2016, Sears filed a motion seeking to substitute Sears Roebuck and Co. ("SRC") for Sears. Sears asserted that SRC was the proper party defendant, a fact which Sears's counsel had determined during the process of responding to discovery requests. Sears claimed that substitution of the proper party defendant was necessary but that Mr. Ismoilov's counsel would not agree to the substitution. On April 22, 2016, the trial court conducted a hearing regarding the pending motions. The court denied Mr. Ismoilov's motion to exclude the Master Protection Agreement from evidence and continued the hearing regarding substitution of the defendant in order to afford Mr. Ismoilov additional time to file a response. Following the subsequent hearing conducted one week later, the court granted the motion to substitute, determining that the substitution would relate back to the date of initial filing. The court noted that SRC had acknowledged that it was adopting all prior admissions made and pleadings filed by Sears. The court also prohibited SRC from later claiming that Sears was the proper defendant.

Mr. Ismoilov subsequently filed a motion on May 20, 2016, seeking recusal of the trial judge. Mr. Ismoilov maintained that the trial judge's act of granting the motion for judgment on the pleadings had deprived Mr. Ismoilov of his constitutional right to a fair trial. Mr. Ismoilov also asserted that the trial judge's acts of denying Mr. Ismoilov's motions, granting substitution of the party defendant, and dismissing most of Mr. Ismoilov's claims demonstrated that the trial court judge had "prejudged" Mr. Ismoilov and exhibited bias and prejudice against him, warranting recusal. Mr. Ismoilov also filed a motion seeking permission for an interlocutory appeal.

On September 13, 2016, the trial court entered an order denying Mr. Ismoilov's recusal motion. The court found the motion to be procedurally deficient because it was not supported by an affidavit and did not contain a declaration under penalty of perjury. See Tenn. Sup. Ct. R. 10B. Despite the procedural shortcomings, the court considered the substance of the motion and found that it was not well taken. The court noted that it

4

had no personal relationship with either party, no interest in the defendant corporation, and no personal history with counsel for either party. The court determined that Mr. Ismoilov had presented no evidence of bias or partiality except for his disagreement with the court's rulings. The court thus determined that the motion should be denied. The trial court concomitantly entered an order denying Mr. Ismoilov's motion for permission to file an interlocutory appeal. The court found that Mr. Ismoilov had failed to present any reason that an interlocutory appeal was necessary in this matter because Mr. Ismoilov would have the remedy of an appeal as of right following entry of a final order.

On November 23, 2016, Mr. Ismoilov filed a motion seeking to enjoin defense counsel from representing "two parties with conflicted interests in violation of Rule 1.7 of the Tennessee Rules of Professional Conduct" and for sanctions. Although Mr. Ismoilov claimed that SRC's counsel could not ethically represent both SRC and Sears because the representation of one would be adverse to representation of the other, he provided no factual basis for his contention. SRC opposed this motion, asserting that no conflict existed. The trial court subsequently denied the motion.

On December 14, 2016, SRC filed a motion for summary judgment. SRC postulated that the twelve-year warranty applicable to the water heater was a limited warranty that promised only to furnish replacement parts or a replacement water heater in the event of a defect. SRC also posited that because such a replacement water heater had been provided, SRC maintained no further liability to Mr. Ismoilov. SRC asserted that it had not expressly warranted that the water heater would be free of defects. SRC further asserted that it had not agreed to pay incidental or consequential damages caused by any alleged defect.

In support of the motion, SRC attached an affidavit from Tim Adkisson, Director of Product Quality and Support for SRC. Mr. Adkisson stated that the water heater in question originally came with an owner's manual that contained information regarding the applicable twelve-year limited warranty. A copy of said owner's manual was attached to Mr. Adkisson's affidavit. Mr. Adkisson affirmed that no other warranty was applicable to the water heater in question. The attached owner's manual provides in pertinent part:

> After one year and through 12 years from the date of purchase for water heaters used in a single-family residence, if a leak occurs in the tank, Sears will furnish a new current model water heater of equal capacity and quality. You will be charged for any installation.

> * * *

After one year and through 12 years from the date of purchase, when your Sears Kenmore water heater is used in a single-family residence and is installed and operated in accordance with the information in this manual, if a part fails due to a [sic] materials or workmanship, Sears will furnish a replacement free of charge.  You will be charged for labor.

SRC also filed a statement of material facts in support of its motion for summary judgment, stating that the twelve-year warranty contained only the above-quoted language.  SRC averred that no other warranties were provided with the water heater.  SRC further claimed that the water heater had been promptly replaced.

On January 30, 2017, the trial court entered an order compelling SRC to respond completely and accurately to Mr. Ismoilov's written discovery within thirty days.  This order referenced a hearing held on December 16, 2016.  Meanwhile, on January 27, 2017, the trial court conducted a hearing regarding SRC's summary judgment motion, which the court granted by order dated February 16, 2017.  In its order, the court stated:

> Defendant came before this Court on January 27, 2017, on Defendant Sears Roebuck and Co.'s Motion for Summary Judgment. Defendant filed its Motion for Summary Judgment on December 14, 2016. Defendant's motion provided notice of the hearing scheduled for January 27, 2017 and indicated that "Failure to file a timely written response to the motion may result in the motion being granted without further hearing." Plaintiff did not file a response and Plaintiff's attorney did not appear at the scheduled hearing.
>
> Notwithstanding Plaintiff's failure to respond or appear, the Court has independently reviewed Defendant's Motion for Summary Judgment, which appears to be well-taken.  Thus, the Court finds that there are no genuine issues of material fact and Defendant Sears Roebuck and Co. is entitled to judgment as a matter of law.
>
> It is hereby ORDERED, that Plaintiff's claims against Defendant Sears Roebuck and Co. are dismissed with prejudice.

On February 6, 2017, ten days prior to the trial court's entry of a written order granting summary judgment, Mr. Ismoilov filed a "Motion to Reconsider the Absentia Granting Sears Roebuck and Co. Motion for Summary Judgment and to Schedule a Hearing for the Motion."  Mr. Ismoilov claimed that he did not receive a notice regarding the summary judgment hearing, had no opportunity to respond to the motion, and was still awaiting discovery responses from SRC.  On February 17, 2017, Mr. Ismoilov filed a

notice stating that he wished to withdraw the motion to reconsider. On March 8, 2017, Mr. Ismoilov filed a response to the summary judgment motion, to which he attached his own affidavit and copies of his electronic mail correspondence with SRC regarding his claim. Mr. Ismoilov also filed a statement of material facts he claimed were in dispute as well as a response to the statement of facts filed by SRC.

On March 8, 2017, Mr. Ismoilov filed a motion seeking additional findings of fact and conclusions of law and seeking alteration or amendment of the trial court's order granting summary judgment. Mr. Ismoilov asserted that he had never received SRC's responses to written discovery before summary judgment was granted. In addition, according to Mr. Ismoilov, the trial court's order granting summary judgment failed to state the court's basis for its grant of summary judgment. Mr. Ismoilov contended that there were genuine disputes of material fact which precluded a grant of summary judgment.

SRC filed a response to the motion, asserting that it had filed supplemental responses to the written discovery propounded by Mr. Ismoilov. SRC attached copies of the supplemental responses, as well as a copy of electronic mail correspondence from Mr. Ismoilov's counsel, dated December 16, 2016, wherein counsel acknowledged receipt of the summary judgment motion and corresponding documents. SRC accordingly argued that the order granting summary judgment was proper.

On March 29, 2017, the trial court entered an order regarding Mr. Ismoilov's motion to alter or amend. The court determined that the motion was well taken concerning Mr. Ismoilov's request that the court state specific legal grounds supporting a grant of summary judgment to SRC. The court determined that the motion was not well taken in all other respects. As to the grant of summary judgment, the court stated in pertinent part:

> The Defendant's Motion for Summary Judgment was properly granted. First, Plaintiff failed to file any response to the Motion for Summary Judgment. By a Case Management Order entered November 21, 2016, the parties were advised that Defendant was required to file its Motion for Summary Judgment by December 16, 2016 and that the hearing on the motion was scheduled for January 27, 2017. The certificate of service shows that the motion and accompanying statement of uncontested facts were served on Plaintiff on December 14, 2016. Plaintiff's counsel even contacted defense counsel concerning the motion and requested electronic copies of the Statement of Undisputed Facts. Despite such clear notice, Plaintiff inexplicably failed to file any responsive pleading to the

motion.  Accordingly, since no opposition was filed, it was appropriate to grant the motion pursuant to Local Rule 26.04(g).

Plaintiff attempts to rely upon the failure of the Defendant to comply with an Order to Compel Discovery as justification for his lack of response. On December 16, 2016, this Court partially granted Plaintiff's Motion to Compel and ordered Defendant to comply within 30 days of entry of the order.  Plaintiff again was dilatory and waited until January 13 to submit his order for signature and the Order was signed on January 30, 2017, 3 days after the grant of Summary Judgment.  Plaintiff never asked for a continuance of the scheduled hearing on the Motion for Summary Judgment.  The Court finds that the pending Order to Compel did not automatically suspend the pending Motion for Summary Judgment. Frankly, the matters to be disclosed pursuant to the Order to compel generally dealt with damages and had little to do with the grounds for the Motion for Summary Judgment.

In addition, the Court independently reviewed the motion and found that there were no genuine issues of material fact and Defendant was entitled to judgment as a matter of law.

However, Plaintiff is correct that the legal grounds should have been more clearly stated in the Order.  Plaintiff's claim is one for breach of express warranty regarding a water heater that exploded in Plaintiff's residence.  Although the water heater has been replaced, Plaintiff now seeks incidental and consequential damages he incurred as a result of the explosion.

Plaintiff was never able to produce the express warranty, but in its statement of uncontested facts, Defendant submitted the Owner's Manual sold with the water heater and containing the subject warranty.  (Exhibit 1 to Affidavit of Tim Adkisson)  Importantly, this fact was not disputed by Plaintiff since no response was filed.  On page 32, the Owner's Manual contains a 12-year limited warranty that only provided for replacement of the water heater as well as replacement parts.  Defendant has also produced the Affidavit of Tim Adkisson, stating that "[n]o warranty is applicable to the . . . water heater other than what is provided on Page 32 . . ." (Affidavit of Tim Adkisson, ¶ 6).  Thus, the warranty sold with the subject water heater did not include an award of incidental and consequential damage as a result of any malfunction of the water heater.  Accordingly, the Court finds this fact undisputed.  There being no genuine issue of material

fact as to the existence of an express warranty offering greater protection (including extended protection beyond the statute of repose), and since Plaintiff's water heater has been replaced, Defendant has negated an essential element of Plaintiff's claim and is entitled to judgment as a matter of law.

Plaintiff also seeks modification of two other previous orders of this Court. Specifically, Plaintiff seeks to alter or amend this Court's March 15, 2016 order granting, in part, Defendant's Motion for Judgment on the Pleadings and this Court's May 13, 2016 order substituting defendant. Respectfully, this Court denies these requests finding its prior orders to be appropriate. Specifically, neither of these motions satisfies any of the grounds for modification set forth in Rule 60.

Therefore, the Order Granting Sears and Roebuck Co. Summary Judgment entered February 16, 2017 is hereby amended to include the statement of legal grounds contained herein. Plaintiff's Motion is respectfully DENIED in all other respects.

Mr. Ismoilov timely appealed.

## II. Issues Presented

Mr. Ismoilov presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred by granting Sears's motion for judgment on the pleadings with regard to Mr. Ismoilov's claims of strict liability, breach of implied warranty, negligence, and unfair or deceptive trade practices.

2.  Whether the trial court erred by determining that Sears was not equitably estopped from relying on expiration of the ten-year statute of repose for products liability based upon Sears's alleged admission of liability and promise to pay for damages.

3.  Whether the trial court erred by determining that Mr. Ismoilov's claim based on the implied warranty of merchantability was subject to the ten-year statute of repose.

4. Whether the trial court erred by determining that Mr. Ismoilov's negligence claim was subject to the ten-year statute of repose.

5. Whether the trial court erred by determining that Mr. Ismoilov's claim asserting unfair and deceptive trade practices was subject to the ten-year statute of repose.

6. Whether the trial court erred by granting Sears's motion to substitute the party defendant.

7. Whether the trial court erred by denying Mr. Ismoilov's motion to exclude the Master Protection Agreement.

8. Whether the trial court erred by denying Mr. Ismoilov's motion seeking recusal of the trial judge.

9. Whether the trial court erred by granting SRC's motion for summary judgment despite the existence of genuine issues of material fact and outstanding discovery requests.

10. Whether the trial court erred by denying Mr. Ismoilov's motion to alter or amend the order granting summary judgment in favor of SRC.

11. Whether the trial court erred by "re-ruling" on the motion for summary judgment and granting same despite Mr. Ismoilov's filing of a response.

### III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250.

As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S.Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

IV. Judgment on the Pleadings

Issues one, three, four, and five concern the propriety of the trial court's decision to grant judgment on the pleadings with regard to Mr. Ismoilov's claims of strict liability, breach of implied warranty, negligence, and unfair or deceptive trade practices. As this Court has previously explained:

> A motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed but within such time as not to delay the trial." Tenn. R. Civ. P. 12.03. When a motion for judgment on the pleadings is made by the defendant, it is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. *Waldron v. Delffs,* 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998). Such a motion admits the truth of all relevant and material averments in the complaint but asserts that such facts cannot constitute a cause of action. *Id.* In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. *Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 470 (Tenn. 2004); *McClenahan v. Cooley,* 806 S.W.2d 767, 769 (Tenn. 1991). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is *de novo,* with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Center, P.C.,* 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000).

*Timmins v. Lindsey*, 310 S.W.3d 834, 838-39 (Tenn. Ct. App. 2009).

In its order ruling on the motion for judgment on the pleadings, the trial court stated the following with regard to Mr. Ismoilov's claims in pertinent part:

> On February 5, 2016, the parties came before the Court on Defendant's Motion for Judgment on the Pleadings. The Court finds that Defendant's Motion is well-taken as to all claims except for Plaintiff's claims arising out of breach of express warranty. In reaching its decision, the Court found that Tennessee law clearly states that the statute of repose cannot be tolled like the statute of limitations. However, Tennessee courts have not determined whether an express warranty which is longer than the statute of repose will extend liability for parties to the contract. Finding no Tennessee law on point, the Court found that the North Carolina Supreme Court has addressed this issue recently in Christie v. Hartley Construction,

12

766 SE2d 283 (Dec. 19, 2014). North Carolina recognized, as does Tennessee, that parties have the freedom to contract. The Christie court reached the conclusion that this included the freedom to contract away the statute of repose. The Court believes that the Tennessee Supreme Court would hold as [the] North Carolina Supreme Court did when evaluating a similar contract. This order is without prejudice to Defendant filing a motion for summary judgment or motion to dismiss at a later date.

In this case, Plaintiff has alleged that an express warranty of 12 years exists between the parties. The express warranty, however, was not attached to Plaintiff's Amended Complaint. Therefore, the Court orders Plaintiff to file a More Definite Statement and to attach a copy of the express warranty on which he relies or to provide a statement as to why the express warranty is not available. Plaintiff must file his Amended Complaint by March 11, 2016.

SRC asserts that the trial court appropriately granted judgment on Mr. Ismoilov's claims of breach of implied warranty, strict liability, and negligence based on the statute of repose applicable to products liability actions. We agree. Tennessee's products liability statutes are codified at Tennessee Code Annotated §§ 29-28-101, *et seq*. (2012 & Supp. 2017). Tennessee Code Annotated § 29-28-102(6) (2012) defines a products liability action as:

> all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever . . . .

In this matter, Mr. Ismoilov's claims focus on an allegedly defective water heater sold by SRC. Ergo, Mr. Ismoilov's claims based in strict liability, negligence, and breach of implied warranty are subject to the products liability statutory scheme. *See id*.

Tennessee Code Annotated § 29-28-103 (2012) provides that any "action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28-3-

13

104, 28-3-105, 28-3-202 and 47-2-725, but notwithstanding any exceptions to these provisions, it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption . . . ." According to Mr. Ismoilov's complaint, the water heater at issue was purchased on June 2, 2005. Therefore, based on the ten-year statute of repose provided by Tennessee Code Annotated § 29-28-103, Mr. Ismoilov's claims based in strict liability, negligence, and breach of implied warranty expired on June 2, 2015. Accordingly, these claims filed by Mr. Ismoilov on June 16, 2015, were untimely.

With regard to Mr. Ismoilov's claim pursuant to the Tennessee Consumer Protection Act ("TCPA"), which is based on communications with an SRC representative following the water heater's failure in 2014, it is questionable whether Mr. Ismoilov properly alleged any of the unfair or deceptive acts described in the statute. *See* Tenn. Code Ann. § 47-18-104(b) (Supp. 2017). Mr. Ismoilov's amended complaint referred to Tennessee Code Annotated § 47-18-104(b)(19), which describes "[r]epresenting that a guarantee or warranty confers or involves rights or remedies which it does not have or involve." Mr. Ismoilov relied upon this subsection in contending that the claims adjuster, Mr. Maines, misled him into thinking that his property damage claim would be paid pursuant to the warranty. However, as SRC points out, Mr. Maines did not expressly state in any of the communications presented that the warranty provided coverage for such a claim.

Furthermore, we determine that Mr. Maines's actions did not constitute "trade," "commerce," or a "consumer transaction" as those terms are defined in the TCPA. The TCPA provides that it was enacted to "protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." *See* Tenn. Code Ann. § 47-18-102(2) (2013). Tennessee Code Annotated § 47-18-103 (2013) defines "'trade,' 'commerce,' or 'consumer transaction'" as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tennessee Code Annotated § 47-18-104 thereafter describes the particular unfair or deceptive acts or practices "affecting the conduct of any trade or commerce" that the TCPA has declared to be unlawful. Ergo, for the alleged act to be unlawful pursuant to the TCPA, it must affect "the conduct of any trade or commerce," which by definition involves the "sale, lease or rental, or distribution of any goods, services, or property . . . ." Moreover, in order to bring a private action based on the TCPA, a plaintiff must show that he suffered "an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice described by § 47-18-104(b) and

declared to be unlawful by this part . . . ." *See* Tenn. Code Ann. § 47-18-109(a)(1) (2013).

Assuming, *arguendo*, that Mr. Maines's communication in this matter could be deemed as representing that the express warranty at issue "confer[red] or involve[d] rights or remedies which it d[id] not have or involve," Mr. Maines was not involved in "trade" or "commerce" as these terms are defined in the statute. *See* Tenn. Code Ann. §§ 47-18-103, -104(b)(19). The water heater at issue had been sold many years before Mr. Maines's communication with Mr. Ismoilov occurred. In other words, this is not a case wherein the representations regarding a warranty induced the buyer to purchase the product. *See, e.g., White v. Eastland*, No. 01-A-019009-CV-00329, 1991 WL 149735, at *1 (Tenn. Ct. App. Aug. 9, 1991) (noting that the plaintiff filed suit against the defendant alleging that the warranty on a car was not transferable, as the defendant had represented). Although Mr. Maines communicated with Mr. Ismoilov regarding his warranty claim some years following the sale of the product, Mr. Ismoilov has not shown that Mr. Maines was involved in "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." *See* Tenn. Code Ann. § 47-18-103. For this reason, we conclude that Mr. Ismoilov has failed to state a claim pursuant to the TCPA.[2]

Mr. Ismoilov also contends that SRC should be equitably estopped from relying on expiration of the ten-year statute of repose for products liability due to Mr. Maines's alleged admission of liability and promise to pay for damages. Our research, however, has revealed no Tennessee cases wherein the products liability statute of repose was tolled based upon equitable estoppel. When analyzing whether Tennessee Code Annotated § 29-28-103 should be tolled for mental incompetency, our Supreme Court elucidated:

> In considering whether the [Tennessee Products Liability Act] statute of repose is tolled for mental incompetency, we must determine and give effect to the intent of the legislature. *See, e.g., Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999). In so doing, we are to

---

[2] We note that the trial court dismissed Mr. Ismoilov's TCPA claim based on the products liability statute of repose. As SRC acknowledged in its appellate brief, Mr. Ismoilov's claim brought pursuant to the TCPA is not a products liability action. Rather, Mr. Ismoilov's allegations regarding the TCPA rest solely upon the alleged misrepresentations made by Mr. Maines following the filing of a claim for damages by Mr. Ismoilov. Despite this error by the trial court, we determine that the court ultimately reached the correct result in dismissing the TCPA claim. *See Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999) ("Where the Trial Judge reaches the correct result for the wrong reason we will affirm."); *see also Torres v. Bridgestone/Firestone N. Am. Tire, LLC.*, 498 S.W.3d 565, 577 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Aug. 18, 2016).

15

examine the "natural and ordinary meaning of the language used" in the TPLA, "without a forced or subtle construction that would limit or extend the meaning of the language." *See, e.g., Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn. 1996). Where the language of the statute "is clear and unambiguous, then this Court will give effect to the statute according to the plain meaning of its terms." *Lavin v. Jordon*, 16 S.W.3d 362, 365 (Tenn. 2000); *see also Gragg v. Gragg*, 12 S.W.3d 412, 415 (Tenn. 2000).

The TPLA ten-year limiting period states that "in any event, an action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption." Tenn. Code Ann. § 29-28-103(a) (emphasis added). When read in context, the language "in any event" carries precisely the same connotation as "notwithstanding other exceptions" or "without regard to any other limitations," and the General Assembly's use of this language compels the conclusion that it intended for the ten-year repose period to be an absolute bar beyond which no products liability cause of action could exist. Because the language is clear, this Court is not in a position to give the statute a construction which is not supported by the language. Consequently, the use of such broad language by the General Assembly weighs very heavily against finding an implied exception to the general ten-year repose period for mental incompetency.

*Penley v. Honda Motor Co., Ltd.*, 31 S.W.3d 181, 185 (Tenn. 2000) (emphasis added).

For the same reasons elucidated by our Supreme Court in *Penley*, we determine that the General Assembly's choice of language weighs heavily against finding an exception to the ten-year statute of repose based on equitable estoppel. In addition, as SRC points out, this Court has also previously ruled that the statute of repose would not be tolled even by a defendant's fraudulent concealment. *See Damron v. Media Gen., Inc.*, 3 S.W.3d 510, 513 (Tenn. Ct. App. 1999) (acknowledging the "strong indication from the legislature of its intent to make the statute of repose the outside limit in which the cause of action could accrue."). We therefore conclude that the ten-year statute of repose contained in Tennessee Code Annotated § 29-28-103 should not be tolled in the situation herein. For all the foregoing reasons, we affirm the trial court's grant of judgment on the pleadings with regard to Mr. Ismoilov's claims of strict liability, breach of implied warranty, negligence, and unfair or deceptive trade practices.

## IV. Substitution of Party Defendant

Mr. Ismoilov argues that the trial court erred by granting Sears's motion to substitute the proper party defendant. Sears moved to substitute SRC, alleging that SRC was the actual seller of the water heater and that Sears had nothing to do with the sale of the water heater. In essence, Sears posited that Mr. Ismoilov had sued the wrong defendant. In granting the motion, the trial court determined that the substitution would relate back to the date of initial filing. In further support, the court noted that SRC had acknowledged that it was adopting all prior admissions made and pleadings filed by Sears. The court also prohibited SRC from later claiming that Sears was the proper defendant.

As this Court has previously explained with regard to substitution of a party:

> A trial court's decision on a motion to substitute parties is reviewed for abuse of discretion. *See Bell v. Nolan*, No. M2000-02684-COA-R3-CV, 2001 WL 1077956, at *4 (Tenn. Ct. App. Sept. 14, 2001). A trial court abuses its discretion only when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Williams* [*v. Bapt. Mem. Hosp.*], 193 S.W.3d [545,] 551 [(Tenn. 2006)] (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

*Holley v. Blackett*, No. W2011-02115-COA-R3-CV, 2012 WL 4799053, at *3 (Tenn. Ct. App. Oct. 10, 2012).

The Tennessee Rules of Civil Procedure contemplate that such changes in parties can occur. Tennessee Rule of Civil Procedure 21 regarding misjoinder of parties allows parties to be "dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." In this matter, SRC was substituted as a party defendant in place of Sears upon Sears's own motion, such that there was no prejudice to the defendant. Because SRC adopted all prior admissions made and pleadings filed by Sears and because SRC was prohibited from taking any action to shift liability to Sears, we conclude that the substitution also did not prejudice Mr. Ismoilov in any way. We therefore affirm the trial court's decision to allow such substitution, finding no abuse of discretion therein.

## V. Exclusion of Evidence

Mr. Ismoilov next asserts that the trial court erred by refusing to exclude the Master Protection Agreement from evidence. The trial court's ruling on this issue

likewise is reviewed under an abuse of discretion standard. *See Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 284 (Tenn. Ct. App. 2012) (explaining that an appellate court reviews a trial court's ruling on a motion *in limine* under an abuse of discretion standard). However, a review of the record herein demonstrates that the trial court did not rely upon the Master Protection Agreement for any purpose when making its ultimate ruling. Rather, the warranty contained in the owner's manual provided the basis for the court's grant of SRC's motion for summary judgment. Accordingly, any error by the court in refusing to exclude the Master Protection Agreement was harmless because the court placed no reliance on this document.

## VI. Recusal

Mr. Ismoilov argues that the trial court erred by denying his motion seeking the trial court judge's recusal. We review the trial court's disposition of a motion for recusal under a *de novo* standard of review. *See* Tenn. Sup. Ct. R. 10B § 2.06. As our Supreme Court has explained:

> Tennessee Supreme Court Rule 10, Canon 3(E)(1) states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."[3] We have held that a recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or "'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis* [*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564-65 [(Tenn. 2001)] (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Even if a judge believes he can be fair and impartial, the judge should disqualify himself when "'the judge's impartiality might be reasonably questioned'" because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)).

*Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009); *see Malmquist v. Malmquist*, 415 S.W.3d 826, 838-39 (Tenn. Ct. App. 2011). "Adverse rulings and 'the mere fact that a witness takes offense at the court's assessment of the witness,' do not provide grounds for recusal, however, in light of the 'adversarial nature of litigation.'" *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (quoting *Davis v. Liberty Mut. Ins.*

---

[3] Effective July 1, 2012, this provision is located within Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1).

*Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)).  In this case, Mr. Ismoilov expressed no other basis for recusal except the trial court's adverse rulings.

In its order denying Mr. Ismoilov's motion for recusal, the trial court found that it had no personal relationship with either party, had no interest in the defendant corporation, and had no personal history with counsel for either party.  The court determined that Mr. Ismoilov had presented no evidence of bias or partiality except for his disagreement with the court's rulings.  As this Court has previously elucidated with regard to bias:

> Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party.  *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994).  However,

> [n]ot every bias, partiality, or prejudice merits recusal.  To disqualify, prejudice must be of a personal character, directed at the litigant, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case."

> \* \* \*

> If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge.  However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial.

> Generally, in order to justify recusal, any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.  If the bias is alleged to stem from events occurring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.

*McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at \*3 (Tenn. Ct. App. Feb. 11, 2014) (internal citations omitted).  *See, e.g., Watson*, 448 S.W.3d at 933 ("Although we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] *pro se* post-trial motions, it is well-settled that '[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias.'" (quoting *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at \*31 (Tenn. Ct. App. July

19

31, 2013)); *Malmquist*, 415 S.W.3d at 840 ("The fact that [the trial court judge] helmed this litigation, without apparent bias, even in the face of difficult litigants and protracted litigation, supports his discretionary decision to remain on the case to see it concluded.").

Accordingly, we find no evidence of bias in this matter, wherein Mr. Ismoilov's only alleged evidence of bias or partiality rested upon his disagreement with the trial court's rulings. Mr. Ismoilov has not shown bias or prejudice "of a personal character, directed at the litigant," stemming from an extrajudicial source and "result[ing] in an opinion on the merits on some basis other than what the judge learned from participation in the case." *See McKenzie*, 2014 WL 575908, at *3. We conclude that the trial court properly denied Mr. Ismoilov's motion seeking recusal.

## VII. Summary Judgment

Mr. Ismoilov's remaining issues concern the trial court's grant of summary judgment to SRC based on the limited warranty contained in the owner's manual for the water heater. Mr. Ismoilov argues that summary judgment was premature because discovery had not been concluded and genuine issues of fact existed precluding summary judgment. Mr. Ismoilov likewise contends that the trial court erred by denying his motion to alter or amend its grant of summary judgment.

This Court's review of a grant or denial of a motion for summary judgment is *de novo* with no presumption of correctness. *See Rye*, 477 S.W.3d at 250. We emphasize:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . .

*Id*. at 264.

Following the filing of a motion to alter or amend by Mr. Ismoilov, the trial court entered an order stating the specific grounds for its grant of summary judgment to SRC. The court explained in pertinent part:

> Plaintiff was never able to produce the express warranty, but in its statement of uncontested facts, Defendant submitted the Owner's Manual sold with the water heater and containing the subject warranty. (Exhibit 1 to Affidavit of Tim Adkisson) Importantly, this fact was not disputed by

Plaintiff since no response was filed. On page 32, the Owner's Manual contains a 12-year limited warranty that only provided for replacement of the water heater as well as replacement parts. Defendant has also produced the Affidavit of Tim Adkisson, stating that "[n]o warranty is applicable to the . . . water heater other than what is provided on Page 32 . . ." (Affidavit of Tim Adkisson, ¶ 6). Thus, the warranty sold with the subject water heater did not include an award of incidental and consequential damage as a result of any malfunction of the water heater. Accordingly, the Court finds this fact undisputed. There being no genuine issue of material fact as to the existence of an express warranty offering greater protection (including extended protection beyond the statute of repose), and since Plaintiff's water heater has been replaced, Defendant has negated an essential element of Plaintiff's claim and is entitled to judgment as a matter of law.

Ergo, contrary to Mr. Ismoilov's claims, the trial court did not simply rely on Mr. Ismoilov's initial lack of response in granting the summary judgment motion. Rather, the trial court predicated its decision on the lack of a genuine issue of material fact regarding the warranty and its satisfaction by SRC. *See Rye*, 477 S.W.3d at 265 ("[S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial.").

SRC presented evidence that the warranty on the water heater was a limited one, which only provided for replacement of the water heater in the event of failure. Mr. Ismoilov has never presented any proof that a broader or more comprehensive warranty existed that would cover his consequential property damage claims. Accordingly, SRC presented proof that affirmatively negated an essential element of Mr. Ismoilov's claim. Mr. Ismoilov then failed to "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *See Rye*, 477 S.W.3d at 265. Because there is no genuine dispute regarding the limited nature of the warranty at issue and because there is no genuine dispute that SRC fulfilled its obligations thereunder, we conclude that the trial court properly granted summary judgment in favor of SRC regarding Mr. Ismoilov's breach of express warranty claim.

We further note that despite Mr. Ismoilov's protestations to the contrary, the record demonstrates that he did receive supplemental discovery responses from SRC disclosing that there was no other warranty applicable to the water heater at issue. Because the limited warranty formed the basis for the trial court's grant of summary judgment in favor of SRC, any additional discovery regarding consequential damages and the like was unnecessary. *See, e.g., Rentea v. Rose*, No. M2006-02076-COA-R3-CV,

2008 WL 1850911, at *7 (Tenn. Ct. App. Apr. 25, 2008) (noting that trial courts have wide discretion in discovery matters and finding no error in the trial court's decision to stay additional discovery pending determination of summary judgment when the "relevant facts were known to the parties."); *Burton v. Hardwood Pallets, Inc.*, No. E2001-00547-COA-R3-CV, 2001 WL 1589162, at *6 (Tenn. Ct. App. Dec. 13, 2001) ("[N]o amount of discovery would have changed the subordination agreement and the other relevant facts implicated by the [plaintiffs'] claims, none of which facts are really in dispute."). In the case at bar, Mr. Ismoilov has failed to show that additional discovery would have had any bearing on the summary judgment determination in this case.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. Costs on appeal are assessed to the appellant, Khurshid Ismoilov. We remand this matter to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE